```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF MISSOURI
                   SOUTHEASTERN DIVISION
```

MARLIN SANDUSKY,                )
                                )
        Plaintiff,               )
                                )
   v.                            )      No. 1:10 CV 116 DDN
                                )
MICHAEL J. ASTRUE, Commissioner  )
of Social Security,              )
                                )
        Defendant.                )

## MEMORANDUM

This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security denying the application of plaintiff Marlin Sandusky for disability insurance benefits under Title II of the Social Security Act (Act), 42 U.S.C. § 401, et seq. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 16.) For the reasons set forth below, the court affirms the decision of the Administrative Law Judge (ALJ).

## I.  BACKGROUND

Plaintiff, who was born in 1952, filed his application for disability benefits under Title II on June 9, 2008. (Tr. 145-51.) He alleged a December 15, 2007 disability date due to chronic back pain with numbness in his legs. (Tr. 147, 159.) His application was denied initially and on reconsideration. (Tr. 76-81, 83-85.) On February 12, 2010, following a hearing, an ALJ found that plaintiff was not disabled as defined under the Act. (Tr. 4-16.) On May 14, 2010, the Appeals Council denied his request for review. (Tr. 1-3.) Thus, the ALJ's decision stands as the final decision of the Commissioner.

## II.  MEDICAL AND OTHER HISTORY

On February 1, 2008, plaintiff was seen at Crusader Central Clinic in Rockford, Illinois, for lower back pain. His exam indicated that he was generally healthy. He moved about freely including rising from a supine position. Straight leg raising was normal. The general

impression was lumbar myositis.[1]  No other abnormalities were found, and an MRI was ordered. (Tr. 207.)

An MRI on February 5, 2008 revealed L5-S1 degenerative disc disease[2] with a small broad-based central protrusion superimposed on an annular bulge which appeared to contact the origin of bilateral S1 nerve roots with no displacement or compression.  (Tr. 212.)

On July 2, 2008, Marion Panepinto, M.D., a non-examining State Agency medical consultant, completed a Physical RFC Assessment, noting that plaintiff had been diagnosed with degenerative disc disease and borderline hypertension.  (Tr. 225-32.)  He opined that plaintiff had an RFC for "medium" work.  The reviewer also noted that there was no treating source statement regarding plaintiff's physical capacities in the file and that plaintiff appeared credible.  (Tr. 23-32.)

On September 6, 2008, plaintiff was seen in the Emergency Room (ER) of Kishwaukee Community Hospital in Dekalb, Illinois, complaining of back pain.  He stated that he had been in pain for the last five years and that it had increased.  He also complained of tingling down his legs with a pain level of 10/10.  He was diagnosed with acute exacerbation of low back pain and acute hemorrhoids.  He was encouraged to seek medical care, specifically physical therapy and possible neurosurgical intervention. He was prescribed Flexeril, a muscle relaxant, and Vicodin, an opioid analgesic used for pain.  He was instructed on the importance of follow-up treatment, advised to use non-steroidal anti-inflammatory drugs

---

[1] Myositis is inflammation of a muscle.  Stedman's Medical Dictionary 1275 (28th ed. 2006).

[2] Degenerative disc disease is not really a disease but a term used to describe normal changes in spinal discs as a person ages.  Spinal discs are soft, compressible discs that separate the interlocking bones (vertebrae) that make up the spine.  The discs act as shock absorbers for the spine, allowing it to flex, bend, and twist.  Degenerative disc disease can take place throughout the spine, but it most often occurs in the discs in the lower back (lumbar region) and the neck (cervical region).  Web MD   http://www.webmd.com/back-pain/tc/degenerative-disc-disease-topic-overview (last visited May 13, 2011).

(NSAIDs), and advised to return if he had further problems. (Tr. 235-36.)

On September 12, 2008, plaintiff was seen in the ER at Swedish American Hospital in Rockford, Illinois, with complaints of back pain and blood in his urine. He described a 6-month history of rectal bleeding with back pain. He was triaged and discharged. (Tr. 253-54.)

**Testimony at the Hearing**

On November 17, 2009, plaintiff appeared and testified at a hearing before an ALJ in Oak Brook, Illinois.[3] (Tr. 22-42.) Plaintiff testified to the following.

Plaintiff completed the 10th grade. (Tr. 26.) He has pain in his lower back, which was at a level 5/10 at the time of the hearing. He is not currently receiving any treatment for his back pain. (Tr. 27.) Although he did so in the past, he has not used over-the-counter medications for his pain. He sometimes has no pain at all, and other times the pain is so bad he almost passes out. (Tr. 29.) The pain occasionally feels like being hit with a 2x4 with a knife in it. (Tr. 35.)

He eats one meal out at least once a day. He can stand as long as he wants but after a while it causes pain. He can sit for about 10 minutes, although he sometimes must sit while driving for up to an hour and fifteen minutes. (Tr. 30.) He can lift "light stuff" but if he is required to do heavy lifting he must endure the pain later. (Tr. 31.) He is able to perform daily activities such as personal care, cooking, shopping, and taking out the garbage. (Tr. 33.) He eats out with a friend on Saturday mornings and then goes for a drive for an hour or two. Upon return, he lies down for fifteen minutes to an hour in order to stretch his back. (Tr. 35-36.)

He generally spends most of the day lying down. (Tr. 36.) He was instructed to get a colonoscopy for his hemorrhoids, but did not do so because he could not afford it. (Tr. 37.) He no longer has a television or computer, but does have a telephone with internet access which he uses

---

[3]Plaintiff currently resides in Doniphan, Missouri. (Tr. 44.)

to access news.  (Tr. 34.)  He receives a little money from his parents but does not seek regular medical care because he cannot afford it.  (Tr. 35, 39.)  He does not go to the Crusader Clinic, a low cost clinic, because the doctor there was "kind of snotty to [him]."  (Tr. 35.)  He sometimes drinks whiskey for pain relief. (Tr. 27.)

Vocational Expert (VE) Linda Gels also testified at the hearing.  (Tr. 39-42.)  The ALJ asked the VE to assume a hypothetical based on plaintiff's age, education and work experience who could lift and carry 50 pounds occasionally, 25 pounds frequently, stand and/or walk a total of 6 hours during an 8-hour workday, and sit at least 6 hours during an 8-hour workday.  Based on the ALJ's hypothetical the VE testified that such an individual could not perform plaintiff's past relevant work (PRW) at the heavy exertional level, but could perform unskilled medium work as a dining room attendant, hand packager, or a machine feeder.  The VE testified there are about 7,500 such jobs in the region.  (Tr. 40-41.)

### III.  DECISION OF THE ALJ

On February 12, 2010, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 15, 2007, his alleged onset date.  The ALJ found that plaintiff had the severe impairment of degenerative disc disease of his lumbar spine.  (Tr. 9.)  She found that plaintiff's hypertension and hemorrhoids were nonsevere impairments. (Id.)  The ALJ concluded that plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. § 404, Subpart P, Appendix 1, Regulations No. 4.  (Tr. 9-10.)

The ALJ found that plaintiff had the RFC to perform the full range of "medium" work as defined in 20 C.F.R. § 404.1567 (c).  The ALJ did not find plaintiff persuasive, noting in support that plaintiff was not receiving any treatment for his allegedly disabling back pain, that he was not taking any medication, and that he uses alcohol for pain relief.  The ALJ also noted plaintiff's testimony that he cannot afford regular medical care and does not go to the low cost clinic because he does not like the doctor there.  The ALJ also noted that, although plaintiff testified that he receives money from his parents, he eats out daily and

-4-

purchases alcohol regularly.  He is also able to drive, eat out daily, read, and take care of his personal needs.

The ALJ determined that, although plaintiff's impairments would prevent him from performing his PRW, his impairments would not prevent him from performing other work that existed in significant numbers in the national economy.  (Tr. 10-13.)  Consequently, the ALJ concluded that plaintiff was not disabled.  (Tr. 13.)

## IV.  GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole.  Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Id.  In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision.  Id.  As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently.  See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months.  42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A); Pate-Fires, 564 F.3d 935, 942.  A five-step regulatory framework is used to determine whether an individual qualifies for disability.  20 C.F.R. §§ 404.1520(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Pate-Fires, 564 F.3d at 942.

Steps One through Three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment.  Pate-Fires, 564 F.3d 935, 942. If the claimant does not

suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Id. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform his PRW. (Id.) The claimant bears the burden of demonstrating he is no longer able to return to his PRW. Id. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work. Id.

## V. DISCUSSION

Plaintiff argues the ALJ erred in assessing his RFC because there is no substantial evidence to support the finding he can perform a full range of medium work and because the ALJ assessed his RFC without the benefit of ER records. He also argues the ALJ's credibility determination does not comply with SSR 96-7p. This court disagrees.

### A. Credibility

The Eighth Circuit has set forth the standard courts should follow when evaluating subjective complaints in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). Polaski holds that the ALJ must consider "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." Id. at 1322. Although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence, another factor to be considered is the absence of objective medical evidence to support the complaints, Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008). The ALJ is not required to discuss each Polaski factor as long as "he acknowledges and considers the factors before discounting a claimant's subjective complaints." Moore v. Astrue, 572 F.3d 520, 524 (8th Cir. 2009). If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). The primary question is not whether plaintiff experiences the symptoms alleged, but whether it is

-6-

credible that they are of the severity to prevent him from performing <u>any</u> type of work. See <u>McGinnis v. Chater</u>, 74 F.3d 873, 874 (8th Cir. 1996).

The ALJ here found that plaintiff was not fully credible. The ALJ referenced the <u>Polaski</u> factors from 20 C.F.R. § 404.1529, as well as SSR 96-7p. She then referred to various factors that detracted from the credibility of plaintiff's subjective complaints. The ALJ discussed plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms that were inconsistent with the record evidence. (Tr. 10-12.) The ALJ noted, contrary to plaintiff's alleged inability to work due to back pain, in February 2008, John Wall, M.D., noted that plaintiff's lumbar region was supple, and his joints were normal. (Tr. 11, 207.) Plaintiff was able to move about "quite freely," including rising from a supine position, and straight leg raise testing was normal. (Tr. 11, 207.)

Similarly, in September 2008, an ER physician at Kishwaukee Community Hospital noted that plaintiff had no lumbar or thoracic spine tenderness. (Tr. 11, 236.) Plaintiff also had full muscle strength and was able to squat and walk across the room without difficulty. (Tr. 11, 236.) See <u>Forte v. Barnhart</u>, 377 F.3d 892, 895 (8th Cir. 2004) (lack of objective medical evidence is a factor an ALJ may consider). Further, the ALJ noted that no treating or examining physician opined that plaintiff was disabled and unable to perform any type of work. (Tr. 12.) See <u>Young v. Apfel</u>, 221 F.3d 1065, 1069 (8th Cir. 2000) (lack of significant restrictions imposed by treating physicians supported the ALJ's conclusion of no disability).

The ALJ also noted that, although plaintiff claimed that his failure to seek medical treatment was due to financial inability, plaintiff testified that he received money from his parents and ate out on a daily basis. (Tr. 12, 33, 35, 39.) Moreover, there is no indication in the record that plaintiff was ever denied treatment due to inability to pay. (Tr. 12.) While plaintiff received treatment at Crusader Clinic, a low cost clinic, he stopped going because he did not like the doctor. (Tr. 12, 35, 207.) Plaintiff's failure to seek treatment for his back pain contradicts his allegation that it is disabling. See <u>Gwathney v. Chater</u>, 104 F.3d 1043, 1045 (8th Cir. 1997) (claimant's failure to seek medical

assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits).  The rationale for this rule is not to punish claimants for their lapses, but to ensure that claimants do what they can to restore their ability to work.  Alcantara v. Astrue, 257 Fed. Appx. 333, 335 (1st Cir. 2007).

The ALJ also considered plaintiff's daily activities in finding his subjective complaints less than fully credible. (Tr. 12.) See 20 C.F.R. § 404.1529(c)(3)(I).  As the ALJ noted, plaintiff lived alone and took care of his personal needs. (Tr. 12, 26, 32-33.)  Plaintiff testified that he could prepare his own meals, wash dishes, and perform household chores. (Tr. 12, 33.)  He further testified that he reads magazines, drives on a daily basis, and visits with a friend once a week. (Tr. 12, 33-34, 38.)  See Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) (activities that are inconsistent with a claimant's assertion of disability reflect negatively upon claimant's credibility).

Because the ALJ referred to the Polaski considerations and cited inconsistencies in the record, the court concludes the ALJ properly found plaintiff not credible and that substantial evidence supports her credibility finding.

**B.   Residual Functional Capacity**

RFC is what a claimant can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and a claimant's description of his limitations. Donahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001); 20 C.F.R. § 404.1545(a).  RFC is a medical question and the ALJ's determination of RFC must be supported by substantial evidence in the record. Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001); Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000).  While the ALJ is not restricted to medical evidence alone in evaluating RFC, the ALJ is required to consider at least some evidence from a medical professional. Lauer, 245 F.3d at 704. Defendant has the burden of proof for an assessment of RFC that will be

used to prove that a claimant can perform other jobs in the national economy. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000).

The ALJ found that plaintiff retained the RFC to perform the full range of medium work. (Tr. 10.) Medium work is work that involves lifting fifty pounds occasionally and twenty-five pounds frequently, standing or walking for six hours in an eight-hour workday, and sitting for two hours in an eight-hour workday. See 20 C.F.R. § 404.1567(c).

The ALJ's RFC assessment is supported by the medical record evidence and other credible record evidence discussed above. (Tr. 10-12.) Dr. Wall noted that plaintiff's lumbar region was supple, and straight leg raise testing was normal. (Tr. 11, 207.) Plaintiff's joints were normal, and he was able to move about "quite freely," including rising from a supine position. (Tr. 11, 207.) Similarly, an ER doctor at Kishwaukee Community Hospital noted that plaintiff had full muscle strength and no lumbar or thoracic spine tenderness. (Tr. 11, 236.) He was also able to squat and walk across the room without difficulty. (Tr. 11, 236.) Further, as the ALJ noted, no physician indicated that plaintiff was unable to work. (Tr. 12.) In fact, consistent with the ALJ's RFC assessment, the State Agency physician found that plaintiff could lift 50 pounds occasionally and 25 pounds frequently, stand or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (Tr. 11, 226-32.)

Plaintiff's argument that the ALJ erred in failing to discuss how the ER notes from Kishwaukee Community Hospital and Swedish American Hospital affected the RFC assessment is without merit. In assessing plaintiff's RFC, the ALJ discussed the records from both hospitals. (Tr. 11, 235-46, 253-55.) The ALJ noted the physical examination at Kishwaukee Community Hospital was unremarkable with the exception of multiple hemorrhoids. (Tr. 11, 235-36.) Plaintiff had full muscle strength and no lumbar or thoracic spine tenderness. (Tr. 11, 236.) He was able to squat and walk across the room without difficulty. (Tr. 11, 236.) The ER records from Swedish American Hospital show that plaintiff complained of back pain, was triaged, and left the hospital. (Tr. 253-55.) They contain no physical examination findings, nor any indication that back pain imposed any work-related limitations. (Tr.

253-55.)  Thus, the ER records from these hospitals generally support the ALJ's RFC finding.

Plaintiff also argues that the ALJ erred by relying on the July 2008 opinion of Dr. Panepinto, the State Agency's physician, in formulating his RFC because the State Agency physician was unable to consider the September 2008 ER notes from the two hospitals.  (Tr. 226-32, 235-46, 253-55.)  Findings of fact made by State Agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individuals impairments must be treated as expert opinion evidence of nonexamining sources.  See SSR 96-6p.  In this case, the State Agency physician's opinion contains a rationale that cites evidence from the record to support his findings and is consistent with the record overall.  (Tr. 11, 226-32.)  Also, the ALJ did not rely solely on the State Agency physician's opinion in formulating plaintiff's RFC.  Rather, the ALJ considered the State Agency physician's opinion along with the other record evidence, including the ER notes.  (Tr. 11.)  The ALJ then made her own RFC finding based on all the credible record evidence.  (Tr. 10-12.)  The court therefore concludes that the ALJ properly considered the State Agency physician's opinion in assessing plaintiff's RFC.  (Tr. 11.)

The court concludes the ALJ properly determined plaintiff's RFC after evaluating all the evidence of record regarding the effects of plaintiff's impairments.  The court therefore concludes the ALJ's RFC assessment is supported by substantial evidence in the record as a whole.

## VI.   CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed.

An appropriate Judgment Order is issued herewith.

                                              /S/    David D. Noce  
                                       **UNITED STATES MAGISTRATE JUDGE**

Signed on September 13, 2011.